NETHERS *v.* NYE, DIR. OF NATURAL RESOURCES.

(No. 241759—Decided August 29, 1972.)

Common Pleas Court of Franklin County.

*Mr. Thomas E. Palmer* and *Mr. Joseph C. Allen*, for plaintiffs.
*Mr. J. Jeffrey McNealey*, for defendant.

WRIGHT, J.  Plaintiff James F. Nethers, has filed on his behalf and on the behalf of all others similarly situated, a complaint praying for permanent injunction against the Director of the Department of Natural Resources of the state of Ohio, William D. Nye.  This complaint was precipitated by the director's application with the Director of the Department of Public Works asking him to determine boundary lines of certain properties titled to plaintiffs but claimed by the state, said application being pursuant to R. C. 123.611.  Following the filing of the complaint herein, the state filed an answer and cross-complaint asserting title to the property involved, asking for an injunction and praying for damages.

The parties hereto have filed with the court a stipulation which includes certain exhibits with respect to certain facts surrounding this controversy, with an eye toward settling a number of difficult legal questions.  The stipulation sets the stage for plaintiffs' motion for summary judgment, hereinafter considered.

In essence, plaintiffs contend that the doctrine of *res judicata* precludes the Director of Natural Resources from pursuing the course outlined above.  Plaintiffs claim further that R. C. 123.611 violates the Ohio and the United States Constitutions, in that said section constitutes an unconstitutional delegation of legislative authority, amounts

to an action of eminent domain and is thus contrary to due process of law, denies plaintiffs the right to a jury trial, places upon them the burden of proof and, finally, that said section amounts to an unlawful delegation of judicial power to an administrative body. A portion of these objections appears to have been mooted by the state having submitted the title question to this court.

As indicated, an answer and cross-complaint was filed by the state in which the state asserts, in essence, that it had acquired title to the lands in question over a hundred years ago, thus entitling the state to an injunction against the plaintiffs from developing said lands, and that certain of the plaintiffs herein have caused damage to the citizens of the state of Ohio by filling said lands for development purposes and thereby destroying said lands' value for fish and game and recreation purposes. Plaintiffs' answer to defendant's cross-complaint questions the capacity of the Director of Natural Resources to bring such action, asserts that the lands involved do not belong to the state of Ohio, and raises the question of *res judicata*, along with the constitutional issues heretofore outlined.

Good faith efforts have been made to settle this controversy with no success, which has unavoidably delayed this procedure. All parties agree that this court should attempt to resolve the question of *res judicata* and the constitutional questions raised prior to trial through a motion for summary judgment, due to the enormous expense involved in the prospective trial of this case should same be necessary. The court has reviewed the very extensive briefs submitted by the parties and the stipulation of facts with care and will summarize some of the principal points found therein.

Buckeye Lake, which was previously known as the Licking Summit Reservoir, was originally completed in 1832. This reservoir was enlarged shortly thereafter. Most of the lands involved in this case are located in an area referred to by the state as "Honeycreek Marsh." All the lands in issue are located in Perry County. In 1825, the Ohio Legislature enacted "An Act to provide for the in-

ternal improvement of the state of Ohio navigable canals.''
23 Ohio Laws 50. Pursuant to that Act, the Ohio Canal
Commission, which was the predecessor to the Ohio Depart-
ment of Public Works, was authorized to construct canals
in the state of Ohio, including feeder or reservoir lakes to
supply the water necessary to maintain water levels in the
canals. Buckeye Lake was such a lake. At least some of
the land in issue in this case was appropriated pursuant to
23 Ohio Laws 57; however, the lands so appropriated were
not described by metes and bounds, although references
to some of the land appear in the Canal Commission's
records.

At the direction of the Ohio Canal Commission, the
Attorney General of the state of Ohio, in 1899, brought an
action in ejectment against John Shell in the Common Pleas
Court of Perry County. The defendant, John Shell, filed
a general denial in said case, and after a presentation of
the state's case the trial court granted defendant's motion
for a directed verdict. It is noteworthy that a large por-
tion of the property involved in this suit plainly involved
the waters of Buckeye Lake. (Exhibit A of the stipula-
tion.) A number of transfers with respect to the lands in
question then took place.

On December 15, 1964, the state of Ohio filed a peti-
tion to quiet title against the then owners of the lands
in question, coupled with a request for injunctive relief
against the development of said land for commercial pur-
poses. The property in question in that case also included
a portion of Buckeye Lake. (Exhibit A of the stipulation.)
After presentation of the state's case, upon a motion to
dismiss by the defendants the case was dismissed. In this
case the plaintiffs filed a simple general denial, asserted
the doctrine of *res judicata,* denied the court's jurisdic-
tion of the subject matter and raised certain constitutional
issues.

The doctrine of *res judicata* has many facets. It is
applicable to a cause of action when a matter has been liti-
gated in this or another court to final judgment regardless
of the fashion in which the matter was handled in the pre-

vious lawsuit. It is this court's view that the doctrine is not applicable to different causes of actions which could have been, or, indeed, should have been, litigated as a part of a previously determined lawsuit. Put into context, assume that "A" owns a tract of land and brings either an action in ejectment or, alternatively, an action to quiet title against "B". Assume that "A" has at least color of title. The suit goes to trial and "A" wins. "B" later attacks "A's" title. The doctrine applies whether a new theory is injected into the suit or otherwise. See *White-head* v. *General Tel. Co.* (1969), 20 Ohio St. 2d 108. The doctrine applies to matters already actually litigated, or to a cause once decided even where some defense could have, or indeed should have, been raised—the last aspect applying on the theory of estoppel. Here, we have a situation where there is privity as between the parties, and the subject matter is similar in character. The seeming difficulty arises when one carefully considers the *subject matter* of the lawsuits and the effects of the judgment entries in the cases of *State* v. *John Shell* and *State* v. *James F. Nethers* (hereinafter referred to as *Shell* and *Nethers*).

The description of lands involved in *Shell* as disclosed by exhibit "A" of the stipulation and the subject matter of this lawsuit differ but slightly. However, can a court of equity in effect vest title in private parties to portions of Buckeye Lake proper? This court, as did the trial court in *Nethers*, rejects such a proposition.

Further, *Shell* involved an action in ejectment by the state of Ohio against Shell. The state lost the case and the Ohio Supreme Court affirmed without opinion. There appears to be two basic difficulties in applying the doctrine of *res judicata* to this case on the basis of *Shell*. An action in ejectment is normally founded upon the plaintiff asserting title to the real estate in question, and it would appear clear enough that the trial court must have found that Shell had an interest in some and *possibly* all of the lands in question, for otherwise the state would have been successful in its cause.

But this, in and of itself, is not determinative of the

exact nature of the title to the property. Obviously, the trial court felt that the defendant had some rights; otherwise the result would have been different. It is noteworthy that Shell himself, both before and after the litigation, believed that only a part of the land within the state's description was in controversy. See page 2, brief of *John Shell*, Ohio Supreme Court Case No. 7837 (1902). See, also, the various deeds in the chain of title referring to lands owned by the state or "submerged" or "drowned" by the waters of Buckeye Lake. (Exhibits B, F, G, H, & I.)

Plaintiffs have placed great reliance on the case of *State, ex rel. Wilson,* v. *Preston* (1962), 173 Ohio St. 203. This was a case involving an action for mandamus whereby the petitioner was successful in forcing the state to appropriate land which had previously been specifically held to be in petitioner's possession by way of a ninety-nine year lease, renewable forever. The previous case involved an action by the state for ejectment. In *Preston,* the finding by the court in the action for ejectment was found to be dispositive as to title. The difference between *Preston* and the case at bar is that in *Preston* there was an affirmative finding by the trial court with respect to the defendant's title in the ejectment action. The *Preston* case is a perfect example of a situation where an action of ejectment led to a finding with reference to the defendant's title. In *Shell,* the court merely dismissed the state's cause with no specific finding as to what the nature the defendant's interest in the real estate really was. Thus, *Preston* is not helpful to plaintiffs with respect to the doctrine of *res judicata* in its application to the particular facts at bar. Indeed, it would suggest a contrary conclusion.

While an action in ejectment is generally a possessory action, the issue being a claim for right to possession, it does not of necessity decide the question of title. See *King* v. *Shell Townsend* (1894), 141 N. Y. 358.

It is this court's view that judgment rendered in the *Shell* case is not clearly determinative of the issue of title to the real estate involved in this case, and therefore the doctrine of *res judicata* is not applicable to permit an order

of summary judgment. Nor can plaintiffs assert title by way of adverse possession. See *Hernik* v. *Dir. of Highways* (1959), 169 Ohio St. 403.

The court will now move on to consideration of the *Nethers* case. There, the state brought an action to quiet title against Nethers, one of the plaintiffs in the instant case, in the Licking County Court of Common Pleas. One can only speculate as to result had the roles been reversed, but in any case the trial court directed the verdict against the state at the close of the state's case because "plaintiff failed to establish his case by the quantum and degree of proof required by law." No appeal from that judgment was perfected. It is noteworthy that subject matter in this case also involved portions of the waters of Buckeye Lake.

In the case at bar, the state attempts to avoid the effect of that decree by contending that an action to quiet title must be brought in the county wherein the land is situated, to wit, Perry County. This self-same posture was adopted by Nethers by way of Branch 4 of his defense in *Nethers*. The trial court in *Nethers* obviously rejected that defense as it moved on to the merits of the state's case. The trial court probably relied on a line of reasoning typified by that contained in *Gustafson* v. *Buckley* (1954), 161 Ohio St. 160, 165. That is to say: "* * * If an Ohio court has jurisdiction over the persons of the defendants, there is no apparent reason why it cannot render a judgment *in personam* against them which will effectively determine their rights as against the plaintiffs to Ohio real estate, even if such real estate is located in a county other than that in which the judgment is rendered." Further, in the instant case, it is questionable whether the state may assert lack of jurisdiction, as when the State itself in a prior lawsuit invoked the same jurisdiction with respect to at least a portion of the subject matter which is involved in this lawsuit.

This court specifically reserves ruling on the merits of defendant's counter-claim against plaintiff Nethers for damages in this lawsuit, in light of the state's second cause of action in the *Nethers* case and the judgment entry dis-

missing same, and should this matter ultimately go to trial, this court will require further arguments as to the effect, if any, of the trial court's dismissal of the state's second cause of action. However, this court is of the opinion that the trial court's action in *Nethers*, dismissing the state's first cause of action at the close of the state's case, is not dispositive as to Nethers' claim here of title to the real estate in question. It is axiomatic that a party must recover on the strength of his own title and not on the frailities of the title of his adversary. No cross-petition was filed on behalf of the defendant herein and there is nothing even suggesting a finding of title in *Nethers* in the court's memorandum opinion or its judgment entry. The trial court in *Nethers* quite properly dismissed the quiet title action, and even *assuming* a cross-petition by the defendant and the same failure of proof nothing would be disposed of. See, *e. g.*, the handling of a similar situation in *Ellis* v. *Chestnut* (C. A. Ky. 1956), 289 S. W. 2d 740, paragraph two of the headnotes. Indeed, the court's memorandum opinion in *Nethers* is reminiscent of the efforts of this court and the parties' efforts to settle this controversy over the past year and the seemingly insuperable problems toward this end posed by the absence of intelligible surveys and the like.

In any case, the effect of the decision by the Court of Common Pleas of Licking County in *State* v. *Nethers, supra,* is not clearly determinative of the issue of title to real estate involved in this case so as to support a motion for summary judgment under the theory of *res judicata.*

This court is mindful of inconvenience, expense and real loss that final litigation of this matter could impose on the litigants and their predecessors in title, but to summarily dispose of the state's claim would do at least equal harm in denying the state and its citizenry the use of lands and waters never clearly vested in the plaintiffs herein. For a truly scholarly discourse of the doctrines of *res judicata*, collateral estoppel or estoppel by judgment, see *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, pp. 305-309, pp. 311-312 and pp. 320-322 and cases cited therein.

The plaintiffs herein argue that R. C. 123.611 is uncon-

stitutional as an illegal delegation of judicial authority, and denies to the plaintiffs herein fundamental tenets of due process. The state argues that the form of this action moots most, if not all, of plaintiffs' contentions. Frankly, the legislation in question makes a great deal of common sense and appears to be constitutional on its face. This court is concerned with the nature and extent of judicial review contained therein. The state must sustain its claims by a measure of evidence that is substantial and probative. That is to say, by a preponderance of the evidence. See the unreported case of *Cummings* v. *Cummings*, Franklin County Court of Appeals, 72-AP80, at page 6. Findings pursuant to R. C. 123.611 are subject to judicial review by an appeal *de novo*. However, the nature and form that this action has taken moots all of plaintiffs' objections with the sole exception of what amounts to reargument of the posture just rejected by this court, and the very narrow issue discussed below. That is to say, that the state is exercising eminent domain as opposed to "reclaiming" land previously adjudicated to the plaintiffs herein. This court has ruled on the essence of that argument and finds that there will be no lack of due process in the effort by the state to reclaim its lands pursuant to the legislative mandate contained in R. C. 123.611.

The narrow question of whether this court is the proper forum for a determination of the boundary line dispute, as opposed to a proceeding pursuant to R. C. 123.611, has not been argued as a part of this motion, and to determine that question at this stage of the proceeding appears to the court to be premature. Should plaintiffs wish to raise this question they may do so by way of a motion to dismiss pursuant to Civ. R. 41(B)(4).

Plaintiffs' Motion for summary judgment must be overruled.

*Motion overruled.*